## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:07CR00032 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **JESSEE DANE COX,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; D. Craig Hughes, Houston, Texas, for Defendant.*

In this proceeding under 28 U.S.C. § 2255, I earlier determined that an evidentiary hearing was necessary on the defendant's claim that the attorney who represented him at his drug trafficking trial provided ineffective assistance by failing to advise him of the mandatory life sentence upon conviction, causing the defendant to forgo a more favorable plea agreement. *United States v. Cox*, No. 1:07CR00032, 2013 WL 2295694, at *2 (W.D. Va. May 24, 2013). I took the other claims made by the defendant under advisement pending the evidentiary hearing. *Id.*

The hearing has now been held, at which the defendant and his former attorney testified. This Opinion contains my findings of fact regarding the claim of ineffective assistance as developed at the hearing. I have taken into account the

testimony given at the hearing, the extent of detail and coherent nature of such testimony, the manner of testifying by the witnesses, and the degree to which the testimony is consistent or inconsistent with other record evidence in the case. Based on the facts found and the legal conclusions flowing therefrom, I conclude that counsel's advice was not constitutionally deficient. I also conclude that as to defendant's remaining claims, it is clear from the record that defendant is not entitled to relief as a matter of law. Accordingly, I will grant the government's Motion to Dismiss and deny defendant's § 2255 motion in its entirety.[1]

# I

The underlying facts of the case are as follows.

A grand jury of this court returned a Second Superseding Indictment "Indictment") on January 8, 2008, charging that the defendant, Jessee Dane Cox, and eight codefendants conspired to distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a),

---

[1] Cox filed his initial 2255 motion pro se. The government filed a Motion to Dismiss, to which Cox responded pro se. He then retained present counsel, who filed a supplemental response and represented him at the evidentiary hearing.

841(b)(1)(A), and 846 (Count One).[2]  The court appointed attorney Daniel R.

Bieger to represent Cox.

On April 16, 2008, the United States filed a Sentencing Enhancement

Information ("Information") as to Cox pursuant to 21 U.S.C. § 851.  The

Information described his two prior convictions for felony drug offenses in

Georgia and Virginia and "notifie[d] the Defendant that upon his conviction for the

offense charged in Count One of the Indictment, he shall be sentenced to a

mandatory term of life imprisonment . . . [under §§] 841(b)(1)(A) and 851."

(Information 1, ECF No. 274.)  That same day, Bieger sent Cox a copy of the

Information and a written Plea Agreement offered by the government.  In his cover

letter, Bieger reiterated the language of the Information, advising Cox that

"because you have two prior felony convictions for drug offenses, if you are

convicted of Count I of the indictment the U.S. Code provides that you will have a

mandatory term of life imprisonment." (Def.'s Ex. 1.)

Bieger's letter of April 16, 2008, also discussed guilty plea options.  Bieger

advised Cox that under the proposed Plea Agreement,

> if you plead guilty to Count 1 . . . you will have a mandatory
> minimum sentence of 20 years and [the government] agree[s] that
> they will dismiss the enhancement for one of your felony convictions
> which allows you to get out from under *the potential life sentence*.

[2] Cox was not charged in the original Indictment, in the First Superseding
Indictment, or in Counts Two and Three of the Second Superseding Indictment.

I am aware that your brother was offered a plea. . . [but] the U.S. Attorney's Office would not make that offer to you.

(*Id.* (emphasis added).) Bieger's billing records include his notes about a discussion with Cox on April 21, 2008, as follows: "Me[t] with Jesse Cox discuss[ed] possible cooperation with Gov't to get out from under the 20 year sentence plea agreement or life sentence if convicted by a jury." (Gov't's Ex. 1.)

Bieger testified that, according to his billing notes, he and Cox had considered the plea offer again at a meeting with the prosecutor on May 1, 2008, which meeting Bieger described in a letter to Cox dated May 5, 2008:

> At that time we were contemplating a proffer. [The prosecutor] advised you that you would be required to sign a plea agreement for 20 years. This is to confirm that you did not want to sign a plea agreement for 20 years and would rather go to trial. You understand that you had the possibility of obtaining a 5K motion which could have given you the opportunity to reduce your sentence by approximately half and that that opportunity is now gone. Furthermore, you are aware that if convicted of the charge you face a *very real probability of obtaining a life sentence*.

(Def.'s Ex. 2, p. 1 (emphasis added).) In the May 5 letter, Bieger also advised Cox that two codefendants had pleaded guilty and attached a copy of a third codefendant's statement implicating Cox.

Bieger testified that he had believed that Cox made a terrible decision by rejecting the plea offer. Bieger testified that after Cox had asked him questions in court on May 14, 2008, Bieger had answered those questions in writing the next

day. His memorandum advised Cox that by providing information to the government, he might receive a "5K motion" that could cut his sentence "in half," at the discretion of the judge. (Gov't's Ex. 3.) Bieger also explained that "the jury does not sentence, the judge does. If you are convicted of the charge, then in my opinion the judge will be required to give you a life sentence." (*Id.*) The memorandum also advised Cox about potential evidence to be used against him at trial, such as testimony about statements Cox made and about statements other defendants made describing Cox's involvement in drug transactions. Bieger's memorandum to Cox ended with this line: "Sent under cover letter dated 5/15/08." (*Id.*) Cox testified that he did not remember receiving such a letter or reading Bieger's memorandum.

Cox testified that the term mandatory minimum sentence on the Information had concerned him. When he asked Bieger about it, he claims Bieger had told him that the judge would determine the sentence under the advisory sentencing guidelines. From Bieger's discussions and letters, Cox said, he had understood that a life sentence was a possibility if he was convicted at trial, but not a certainty.

Cox also testified that Bieger had led him to believe the government's case was weak. Cox stated that discovery materials had only mentioned his name twice, and the government had not seized any drugs or money to use against him at trial. He agreed that Bieger had advising him to take the plea offer, because his

codefendants would likely testify against him. However, Cox said he had not understood how the plea offer was a better option, because the judge still had discretion to sentence him to life. Cox testified that if he had known that conviction at trial would result in an automatic life sentence, he would have accepted the government's plea offer.

Cox stood trial before a jury on December 2 through 4, 2008. Using a special verdict form with different drug amount options, the jury found Cox guilty of conspiracy to distribute 500 grams or more of methamphetamine. Cox moved for judgment of acquittal, asserting that the government's evidence materially varied from the conspiracy charged in the Indictment and that the evidence was insufficient to support the jury's verdict. I denied the motion. *United States v. Cox*, No. 1:07CR00032, 2009 WL 1248990 (W.D. Va. May 6, 2009). On May 26, 2009, I imposed a mandatory life sentence as required under 21 U.S.C. § 841(b)(1)(A). Cox's appeal and petition for a writ of certiorari were unsuccessful. *United States v. Cox*, 384 F. App'x 234 (4th Cir.) (unpublished), *cert. denied*, 131 S. Ct. 536 (2010).

At the evidentiary hearing, Cox testified that even at his sentencing, he had not known what the term "mandatory sentence" meant. He said he had known that a life sentence was a "possibility," but he claimed that until later, after he had

talked to fellow inmates at his federal prison, he had not understood that the only

sentence he could have receive if convicted was life in prison.

I construe Cox's § 2255 motion as alleging the following grounds for relief:

Claim (1). Counsel was ineffective in failing (a) to object to admission of Detective Chris Miller's testimony about interviews with Cox; (b) to ask for a limiting instruction on similar acts evidence; (c) to advise Cox that he faced a mandatory life sentence if convicted at trial; and (d) to investigate Cox's prior drug felony convictions;

Claim (2). The prosecution committed misconduct by (a) failing to disclose information pursuant to its obligations under *Brady v. Maryland,* 373 U.S. 83 (1963); (b) soliciting evidence that was inadmissible under Federal Rule Evidence 404(b); and (c) soliciting prejudicial testimony regarding drug transactions that occurred before the conspiracy charged; and

Claim (3). Newly discovered evidence proves that codefendant Randy Musick  lied about drug amounts during Cox's trial.[3]

## II

### A.  STANDARD OF REVIEW.

In a § 2255 motion, the defendant bears the burden of proving his grounds

for collateral relief by a preponderance of the evidence.  *Hall v. United States*, 30

F. Supp. 2d 883, 889 (E.D. Va. 1998) (citing *Miller v. United States*, 261 F.2d 546,

547 (4th Cir. 1958)).  "The burden of showing something by a preponderance of

the evidence . . . requires the trier of fact to believe that the existence of a fact is

---

[3]  Cox's present counsel has conceded that this court had jurisdiction over the criminal charges against Cox.  Therefore, I consider Cox's pro se claim challenging jurisdiction to have been withdrawn.

more probable than its nonexistence." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993) (internal quotation marks and citation omitted). Where the defendant's motion and the record conclusively show that the defendant is not entitled to relief on any particular issue, the court may deny relief without conducting a hearing. 28 U.S.C. § 2255(b).

## B. CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

"Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (internal quotation marks and citations omitted). An attorney provides constitutionally defective assistance to a client by offering incorrect advice concerning the consequences of a plea agreement. *Id.* at 369. Counsel is also constitutionally deficient if a client rejects a beneficial plea agreement in order to

proceed to trial based on counsel's faulty legal theories or inaccurate assessment of the evidence. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1383 (2012).

Counsel provides constitutionally effective assistance with respect to a pending plea offer if he (a) notifies the client of the offered plea agreement and explains its terms; (b) advises the client of the alternative to go to trial, (c) advises the client of the strengths and weaknesses of the case against him, (d) advises the client of the probable outcomes of the guilt and sentencing phases of each option; and (e) permits the client to make the ultimate decision to plead guilty or proceed to trial. *Jones v. Murray*, 947 F.2d 1106, 1110-11 (4th Cir. 1991). Counsel has no obligation to recommend a particular course of action to his client considering a plea agreement, *Carillo-Morales v. United States*, No. 1:07-cr-00081 (GBL), 2013 WL 3390395, at *6 (E.D. Va. July 8, 2013) (citing *Jones*, 947 F.2d at 1110), or to "[e]nsure that his client understands all he is told," *Kratsas v. United States*, 102 F. Supp. 2d 320, 325 (D. Md. 2000) (citing *Jones, 947* F.2d at 1106).

In any claim of ineffective assistance, the defendant must show not only counsel's deficient performance, but also resulting prejudice — by demonstrating a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Strickland*, 466 U.S. at 694-95. If it is clear that the defendant has not satisfied one prong of the *Strickland* test, the court need not inquire whether he has satisfied the other prong. *Id.* at 697.

1. ADVICE ABOUT MANDATORY LIFE SENTENCE.

I find that Cox has not proved by a preponderance of the evidence that his attorney provided deficient advice about the mandatory life sentence Cox faced under § 841(b)(1)(B) if convicted at trial. Therefore, I will deny his motion for relief under § 2255 as to this claim.

First, I do not believe Cox's assertion at the hearing that he misunderstood the term "mandatory life" until he actually got to prison. That claim is not supported by the record and generally undermines his credibility. At Cox's sentencing hearing in 2009, prior to the imposition of sentence, counsel argued to the court in Cox's presence that "our motion objecting to mandatory life imprisonment is objecting to the statutory scheme that does not take into account individual differences . . . and forces the Court to mete out punishment in cookie cutter fashion." (Sentencing Hr'g Tr. 9, May 26, 2009.) Later in the sentencing hearing, during his allocution, Cox stated to the court, "I disagree with the mandatory life imprisonment." (*Id.* at 11.)[4]

Moreover, I find as a matter of fact that Cox had ample notice of his ultimate life sentence at the time he rejected the plea offer that would have removed it. The Information itself informed Cox that he would receive a mandatory life sentence if

---

[4] The Presentence Investigation Report ("PSR") prepared prior to sentencing clearly stated that Cox was subject to a mandatory life sentence (PSR ¶ 80, ECF No. 552) and Cox agreed at the start of the sentencing hearing that he had read the PSR. (Sentencing Hr'g Tr. 2, May 26, 2009.)

convicted. "Mandatory" plainly means "required." Cox has demonstrated during his several court proceedings that he speaks, reads, and understands English. At the time of the criminal proceedings, he was in his early 30s, had completed his GED, and had been determined mentally competent to understand and participate in the proceedings. The term "mandatory life sentence" speaks for itself, even without advice from counsel, and provided Cox clear notice of the inevitable penalty to be imposed if he was found guilty at trial.

Cox claims that when he questioned Bieger about the term "mandatory life," his attorney always downplayed the term and prevented him from comprehending the truly automatic nature of the statutory penalty. Cox points to the conditional wording Bieger used in his letters, such as "potential life sentence" (April 16, 2008) and "very real probability of obtaining a life sentence" (May 5, 2008). (Def.'s Exs. 1 & 2.) Cox claims that he rejected the proffered plea offer because these letters and Bieger's information about judicial sentencing discretion and the advisory guidelines misled him into believing that the court might or might not impose a life sentence after a guilty plea or conviction at trial.

I find the evidence to the contrary. While Bieger could have used firmer language in his letters in reference to the mandatory life sentence at times, I find no instance where his advice was inaccurate. A possibility existed that jurors would acquit Cox or find him guilty of a lesser offense, allowing him to escape a life

sentence after trial.  After a plea or conviction at trial, Cox retained a possibility of cooperating to earn a substantial assistance reduction.  Congress also can and does change sentencing statutes.

I also cannot find that Bieger's choice of words was an unreasonable legal strategy.  As Bieger explained at the hearing, it is often a tightrope balance to keep a client informed of the harsh consequences that may result from certain trial choices without creating a perception of coerciveness that can cause the client to lose trust in counsel's willingness to zealously advocate for him, whatever choice he makes.  It is commonly understood that if counsel pushes too hard for the client to accept a government plea offer, the client may readily believe, "My lawyer has given up on me and all he wants me to do is take a plea."

Moreover, I find credible the evidence that, in the course of the representation as a whole, Bieger precisely and completely communicated to Cox the nature of the § 841(b)(1)(B) life sentence and the benefits of the plea offer.  In the first paragraph of the April 16, 2008, letter, Bieger was explicit:  "if you are convicted of Count I . . . [the law] provides that you will have a mandatory term of life imprisonment."  (Def.'s Ex. 1.)  Bieger also attached the Information itself for Cox to read.  In the second paragraph of the letter, Bieger described, in parallel terms, the plea offer for a "mandatory minimum sentence of 20 years" as one option for Cox to "get out from under the potential life sentence" he faced if he

chose the option described in the first paragraph.  (*Id.*)  Counsel reasonably could have believed that this description made clear to Cox the following advice:  If you are convicted at trial, your sentence will be life in prison, and this plea deal is an opportunity for you to obtain a lesser sentence.

I also find that Bieger's contemporaneously written letters and notes (Def.'s Ex. 1 & 2; Gov't's Ex. 1 & 3), concerning his conversations with Cox, provide more credible evidence of the content of those conversations than do Cox's self-serving recollections several years later.  Indeed, Bieger's uncontroverted testimony was that he wrote the letters and prepared written answers to Cox's prior questions because Cox had previously misrecalled the verbal advice Bieger had given him.  Whether or not Cox read Bieger's letters and notes, they weigh against a finding that Bieger's representation as a whole provided Cox with inaccurate information.  Moreover, I find credible Bieger's testimony at the hearing that the plea deal was Cox's best option.  Indeed, the urgent tone of Bieger's May 5, 2008, letter strongly infers that Bieger had previously made similar, valiant efforts to convey to Cox the dire consequences of rejecting the plea offer.[5]

---

[5]  This letter states, in pertinent part:

> This is to confirm that you did not want to sign a plea agreement for 20 years and would rather go to trial . . . . [Y]ou are aware that if convicted of the charge you face a very real probability of obtaining a life sentence.

(Def.'s Ex. 2.)

Lastly, I find no credible evidence that Bieger ever advised Cox that the government's case was weak. Bieger's testimony that he believed Cox made a serious mistake in rejecting the plea offer is uncontroverted. Moreover, Cox admitted at the hearing that Bieger warned him about his codefendants testifying against him, and Bieger's writings document this advice. Bieger's letters and the May 14 notes consistently caution Cox about the troublesome elements of the case, such as statements not suppressed, codefendants pleading guilty, and dangers presented by Cox's proposed defense strategies.

In conclusion, I find by a preponderance of the evidence that Bieger's representation regarding the government's plea offer and Cox's sentence exposure satisfied the necessary elements defined in *Strickland*, *Padilla*, *Lafler*, and *Jones*. I am convinced that Bieger informed Cox of the proffered plea agreement, accurately explained its terms and consequences, advised Cox of strengths and weaknesses in the case and the probable outcome after a trial or plea, and allowed Cox to make that ultimate choice between pleading guilty or going to trial. In short, the testimony and exhibits support my finding that Bieger provided Cox with all the information he needed to understand and evaluate his options before trial. Cox now recognizes that he made a terribly unwise choice, which he understandably regrets. He has not proved, however, that he made an uniformed decision or that his lawyer provided ineffective assistance.

While I thus will deny relief as to Claim (1)(c), I am constrained to say that I would not have sentenced Cox to life in prison had I not been required to do so by virtue of the jury's verdict and the statutory mandate. Cox has no history of violence and was an addict with longstanding mental health issues. While his conduct and criminal past justified a lengthy prison term, a life sentence was excessive and inappropriate and is an illustration of a serious injustice in our current system. *See United States v. Gregg,* 435 F. App'x 209, 217-223 (4th Cir. 2011) (unpublished) (Davis, J., concurring) (explaining why mandatory life sentences in non-violent drug cases are unwise and unjust). As I told Cox when I sentenced him (Sentencing Hr'g Tr. 13, May 26, 2009), it is important for him to have hope and to think positively about the future. I remain convinced that Congress will eventually see the need to change the present reliance on excessive mandatory drug sentences and make those changes retroactive to those, like Cox, serving unnecessary life sentences.

2. OTHER INEFFECTIVE ASSISTANCE CLAIMS.

A. CHRIS MILLER'S TESTIMONY ABOUT INTERVIEWS WITH COX.

Captain Chris Miller of the Ashe County, North Carolina, Sheriff's Department Narcotics Division, testified that he had interviewed Cox on July 20, 2005, after Cox had executed a written waiver of his *Miranda* rights. (Trial Tr. 9, Dec. 2, 2008.) Miller testified that he had questioned Cox extensively about Cox's

involvement with methamphetamine manufacturing and sales in North Carolina. Miller made handwritten notes of Cox's answers, which Cox signed. (*Id.* at 25.) Some days after the interview, Miller typed up the notes.

Later, Cox became a suspect in an investigation of methamphetamine trafficking between Ashe County, North Carolina, and Grayson County, Virginia. In November 2007 Miller interviewed Cox about this new case. Because Cox came to this interview voluntarily and was not in custody, Miller did not read him his *Miranda* rights. Miller testified that Cox had said he had distributed methamphetamine to Pam Logan and Jeff Davis and that he had purchased quantities of the drug from Lisa Ball and Randy Musick. (Id. at 40-41.)

In Claim (1)(a) of his § 2255 motion, Cox asserts that counsel should have objected to "Doc. 380[ ] Exhibit A, being entered into evidence without a signed statement from" him. (§ 2255 Mot. 5.) The record reflects that this claim has no factual basis. The document to which Cox refers is Miller's typewritten summary of his 2005 and 2007 interviews with Cox and his brother and codefendant, Robert Cox. This summary was provided to the defense in discovery and then attached to Cox's Motion in Limine. Miller also referred to the summary during his trial testimony. The summary document itself, however, was *not* entered into evidence at trial, and no written or typed copy of either of Miller's interviews with Cox was

admitted. Therefore, counsel cannot be found ineffective in failing to raise an objection to the admission of such a document.

Cox also argues that counsel should have "move[d] to suppress this confession" because it concerned "prior bad acts," was "extremely prejudicial and constitute[d] ineffective assistance of counsel since this confession was the primary evidence to support the government's case." (§ 2255 Mot. 5-6.) Counsel raised these very objections in Motions in Limine seeking to exclude evidence of Miller's July 2005 interview with Cox.[6] I denied the motions, finding that the 2005 interview was relevant to the charges before the court, because it involved Cox's "knowledge of and methods of purchasing" methamphetamine. (Trial Tr. 29, Dec. 2, 2008.)

Counsel did not move to suppress either of Cox's statements to Miller as unlawfully obtained, and Cox fails to state facts on which counsel could successfully have done so. The record indicates that Cox voluntarily engaged in both of these interviews, that he waived his *Miranda* rights before the questioning began in July 2005, and that he was not in custody during the November 2007

---

[6] Counsel argued that testimony about Miller's 2005 interview of Cox should be inadmissible, because it predated the conspiracy described in the Indictment and concerned the defendant's prior "bad acts." Counsel also argued that the "probative value of the evidence, defined by its relevance, necessity, and reliability" was outweighed by the potential prejudice to the defendant. (Mot. in Limine 2, Oct. 3, 2008, ECF No. 380.)

interview and was advised he could leave at any time without answering Miller's questions.[7]  On these facts, counsel reasonably could have believed that a Motion to Suppress concerning Cox's 2007 statements to Miller would fail.

Instead, Cox's trial counsel attempted to diminish the evidentiary impact of Cox's admissions by discrediting Miller's testimony about the 2007 interview. Counsel elicited the officer's admission that discrepancies existed between the original, handwritten version of the interview, which Cox signed, and Miller's typewritten version, which he used during his testimony.  Counsel also questioned Miller about the fact that the government had not produced any original written statements, signed by Cox, despite Miller's claim that such signed statements existed.  I cannot find that counsel's strategic decision to address Cox's statements through cross examination was an unreasonable professional tactic under the circumstances.  The reasonableness of counsel's conduct is not overborne by the fact that the jury considered the evidence in the case as a whole sufficient to convict Cox of conspiracy.[8]

---

[7]  A person is in custody and entitled to *Miranda* protections if he "has been formally arrested or if he is questioned under circumstances in which his freedom of action is curtailed of the degree associated with a formal arrest." *United States v. Leshuk*, 65 F.3d 1105, 1108 (4th Cir. 1995) (internal quotation marks and citations omitted).

[8]  The government's case against Cox included testimony from others in the conspiracy that they had purchased methamphetamine from Cox, thus corroborating his confession to having engaged in drug sales.

For similar reasons, I also find that Cox fails to show prejudice stemming from counsel's decision not to move for suppression of the defendant's statements. Because Cox offers no ground on which the statements were illegally obtained, he fails to show any reasonable probability that a motion to suppress them would have been granted or would otherwise have affected the outcome at trial.[9]

For the stated reasons, Cox fails to demonstrate that counsel's handling of Miller's testimony about the interviews was either deficient or prejudicial, as required to state a claim under *Strickland*. I will grant the government's Motion to Dismiss as to Claim (1)(a).

### B. INSTRUCTION REGARDING SIMILAR ACTS EVIDENCE.

In Claim (1)(b), Cox asserts that counsel was ineffective in failing to request a limiting instruction about evidence of his prior bad acts to prevent jurors from convicting him "for having a bad character" or "punish[ing him] for uncharged acts." (§ 2255 Mot. 6.) This claim has no basis in fact. The record reflects that the final jury instructions included Instruction 12A, addressing both of Cox's

---

[9] Cox's present counsel argues that failure to suppress Cox's statements was prejudicial because the government obtained Cox's conspiracy conviction based on his statements to police and evidence that he associated with some of the coconspirators. This argument ignores the fact that counsel had no valid grounds to argue for suppression of Cox's statements. To the extent habeas counsel makes a related argument that the evidence was insufficient to support Cox's conspiracy conviction, such a claim under § 2255 is foreclosed by the Fourth Circuit's ruling on direct appeal that the evidence was sufficient. *Cox*, 384 F. App'x at 235-36; *see United States v. Roane*, 378 F.3d 382, 397 (4th Cir. 2004) (denying relief on § 2255 claims regarding issues already decided on direct appeal).

concerns about evidence of prior bad acts.[10]  I will grant the Motion to Dismiss as to Claim (1)(b).

### C. INVESTIGATION OF PRIOR CONVICTIONS.

In Claim (1)(d), Cox asserts that his trial counsel failed to investigate the prior convictions set forth in the Sentencing Enhancement Information.  Cox alleges in his response to the Motion to Dismiss that he was innocent of the first prior conviction listed on the § 851 notice, because he had been coerced into pleading guilty in that case to avoid jail time for a drug possession actually committed by another individual.  Cox asserts that if counsel had effectively challenged this prior conviction, his federal sentence would have been different.  This 2255 claim is refuted by the record.

The record indicates that Cox's counsel did investigate his prior convictions.  Counsel moved to dismiss from the Information the 2001 Georgia conviction for manufacturing and distribution of a controlled substance.  Counsel proved that Cox

---

[10]  Instruction 12A read as follows:

> You have heard evidence of other acts allegedly engaged in by the defendants that were not charged in this case but were similar to the charged conduct.  You may consider that evidence only as it bears on a defendant's intent or knowledge, and for no other purpose.  Of course, the fact that a defendant may have previously committed an act similar to one charged in this case does not mean that the defendant necessarily committed an act charged in this case.  It is up to the government to prove beyond a reasonable doubt that a defendant committed the acts charged in this case.

(Final Jury Instructions, 16, ECF No. 440.)

had pleaded guilty to a lesser charge of possession of a controlled substance. The United States filed an Amended Sentencing Enhancement Information, correctly listing this offense as a drug possession conviction.

At sentencing, Cox admitted that he had been convicted of the Georgia offense stated on the amended Information.[11] I overruled counsel's objection to the amended Information, finding the original misstatement of the offense to be a clerical error, and denied Cox's motion seeking to strike that conviction from consideration.

Cox has not alleged facts showing that additional investigation would have uncovered any other viable challenge counsel could have raised in arguing for removal of the Georgia drug possession conviction from the sentencing information. Cox's general assertion of innocence — that the threat of jail time coerced him into pleading guilty in that case to an offense he had not actually committed — is not a sufficient ground to bar consideration of this conviction for federal sentencing purposes.[12] Moreover, Cox does not mention any deficiency

---

[11] I asked Cox to "affirm or deny that [he had] been previously convicted as alleged in the amended sentencing enhancement information," and he answered, "I plea bargained." (Sentencing Hr'g Tr. 6-7, May 26, 2009.) I then asked Cox, "I take it from your response that you do not deny that you've been previously convicted as alleged?" and Cox replied, "No, I don't guess." (*Id.* at 7.)

[12] *See Custis v. United States*, 511 U.S. 485 (1994) (holding that, with the sole exception of convictions obtained in violation of the right to counsel, defendants have no right during sentencing or on direct appeal to collaterally attack the validity of prior state convictions used to enhance their federal sentences).

counsel might have discovered concerning the second prior conviction listed on the Information. Finding no allegation showing that counsel's performance with respect to Cox's prior convictions was deficient or prejudicial under *Strickland*, I will grant the Motion to Dismiss as to Claim 1(d).

3. AMENDED INEFFECTIVE ASSISTANCE CLAIMS.

In his response to the Motion to Dismiss, Cox alleges new claims: that trial counsel and appellate counsel were ineffective because they failed to argue the other grounds raised in the initial § 2255 motion.[13] I construe these additional claims in Cox's response as a Motion to Amend. After review of the record, however, I find that the Motion to Amend must be denied as untimely filed under 28 U.S.C. § 2255(f)(1).

A person convicted of a federal offense has one year to file a § 2255 motion, starting from the latest of the following dates:

(1) the date on which the judgment of conviction becomes final;

---

[13] In addition to being untimely, the amended claims fail under *Strickland*. In motions and argument during the trial proceedings, counsel raised Cox's concerns now made in Claims (2) and (4) that trial testimony from Miller and Cox's codefendants did not match prior statements about evidence of prior bad acts. Cox also fails to demonstrate that appellate counsel's strategic decision to focus on the sufficiency of the evidence, rather than the issues in Cox's § 2255 claims, was deficient representation or prejudicial to Cox's chances of success on appeal. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983) (finding counsel has no constitutional duty to raise on appeal every non-frivolous issue requested by defendant).

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

An amendment to a pending § 2255 motion is also subject to the one-year statute of limitations set forth in § 2255(f), unless the amendment relates back to a timely raised claim, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. *Mayle v. Felix*, 545 U.S. 314, 644 (2005). A belatedly filed amended claim cannot relate back to timely filed claims merely because all the claims arose from the same trial, conviction, or sentence. *Id.* at 662. "[R]elation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims." *Id.* at 659 (internal quotation marks omitted); *United States v. Pittman*, 209 F.3d 314, 317-18 (4th Cir. 2000) (finding that late-filed claims did not relate back under Rule 15(c) to timely claims because they arose from

"separate occurrences of both time and type") (internal quotation marks and citation omitted).

Under § 2255(f)(1), Cox's conviction became final on November 1, 2010, when the Supreme Court denied his petition for a writ of certiorari. *See Clay v. United States*, 537 U.S. 522, 527 (2003). Cox timely filed his original § 2255 motion on October 28, 2011, within one year of the date when his conviction became final. However, Cox filed his response to the Motion to Dismiss on January 23, 2012, after the one-year filing period expired on November 1, 2011. The operative facts necessary to support the amended claims raised in the response are different than the operative facts of Cox's timely filed claims, and each amended claim alleges a different instance of ineffective assistance than Cox's original § 2255 motion alleged. Therefore, the amended claims do not relate back to any timely filed claims, and I will deny the Motion to Amend as time-barred under § 2255(f)(1).

## C. PROCEDURALLY BARRED CLAIMS.

Claims regarding trial or sentencing errors that could have been, but were not, raised on direct appeal are barred from review under § 2255, unless the defendant shows cause for the default and actual prejudice or demonstrates that he is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). A proven claim of ineffective assistance of counsel can serve as cause to excuse

procedural default of other claims; however, the claim of attorney error cannot serve as cause if it is procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

To use an actual innocence claim as a procedural gateway to assert claims that are otherwise procedurally barred, the defendant must present "new reliable evidence . . . that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

The United States asserts that all subparts of Cox's Claim (2) are procedurally barred from review under § 2255, because Cox could have raised these issues on direct appeal. I agree. I have already found that Cox's amended claims of ineffective assistance with respect to the issues in Claim (2) are procedurally barred from review under § 2255(f)(1), as untimely filed. Therefore, these defaulted ineffective assistance claims cannot serve as cause for Cox's procedural default of Claim (2), *See Edwards*, 529 U.S. at 451, and he argues no other cause.

Cox appears to be raising an actual innocence argument in Claim (3), as a gateway to review of his procedurally defaulted claims on the merits and as an independent ground for relief under § 2255. I find no merit to this claim in either context.

Cox asserts in Claim (3) that after his conviction, new evidence developed to prove his innocence of conspiracy to distribute 500 grams or more of methamphetamine. At Cox's trial on December 2, 2008, Randy Musick testified that from April to August of 2006, he and Cox and others were involved in a conspiracy that purchased 20 ounces of methamphetamine per week at codefendant Lisa Ball's house and then resold those drugs to others. At Ball's sentencing hearing on March 3, 2009, Musick testified that he saw only two to five ounces of methamphetamine being purchased each week at Ball's house, for a total of 20 ounces from April to August of 2006. Cox argues in Claim (3) that Musick's conflicting testimony in March 2009 constitutes "new evidence" that proves that Musick

> lied at Mr. Cox's trial and as a result raised the stakes. Had Mr. Cox been convicted of conspiracy to possess, he would not have been under the mandatory minimum sentencing provisions which resulted in a life sentence.

(§ 2255 Mot. 13-14.)

On the contrary, Musick's inconsistent testimony in 2009 does not prove Cox innocent of conspiracy. First, Musick's testimony at Ball's sentencing still supports a finding that the conspiracy involved 500 grams or more of methamphetamine, as charged in the Indictment. The total sales of 20 ounces

between April and August of 2006 is still more than 560 grams.[14]  Second, this one discrepancy in Musick's testimony does not undercut the rest of the government's case against Cox.   Several other codefendants testified concerning their observation of Cox's drug purchases and sales.[15]  Cox, in his 2007 interview with Miller, indicated that during the conspiracy period, he purchased methamphetamine from Ball or Musick on numerous occasions, at Ball's house or at his own residence, and that he had "sold a lot of dope."  (Trial Tr. 19, Dec. 2, 2008.)

For these reasons, I cannot find that "it is more likely than not that no reasonable juror would have convicted" Cox in light of the new evidence he proffers in Claim (3).  *Schlup*, 513 U.S. at 324.  Therefore, Cox has not made a sufficient showing of actual innocence to circumvent his procedural default of Claim (2), and I will grant the Motion to Dismiss as to all subparts of this claim.  In addition, as Cox has not proven his actual innocence, I will grant the Motion to Dismiss as to Claim (3).

---

[14]  An ounce equals slightly more than 28 grams.

[15]  *See Cox*, 2009 WL 1248990, at *2-4 (summarizing trial evidence and finding it sufficient to support conviction).

## III

For the reasons stated, I will grant the government's Motion to Dismiss and deny Cox's § 2255 motion. Cox's timely claims of ineffective assistance are without merit, his Motion to Amend to add additional claims of ineffective assistance is untimely filed and will be denied, and his remaining claims are procedurally barred or without merit.

A separate Final Order will be entered herewith.

DATED:  October 15, 2013

/s/  James P. Jones
United States District Judge